UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LOUISIANA MARINE OPERATORS, LLC | CIVIL ACTION NO. 20-00008 |
| VERSUS | JUDGE |
| CHRISTOPHER CRUISE | MAGISTRATE JUDGE |

**COMPLAINT FOR DECLARATORY JUDGMENT**

NOW INTO COURT, through undersigned counsel, comes Complainant, Louisiana Marine Operators, LLC (hereinafter referred to as "LMO") which, in seeking Declaratory Judgment, respectfully represents as follows:

1.

Louisiana Marine Operators, LLC, is a Louisiana limited liability company, doing business in the State of Louisiana and within the territorial waters of the State of Louisiana and at all pertinent times hereto, was the owner and operator of the M/V MISS LILLIE.

2.

Made respondent herein a Christopher Cruise ("Cruise"), a resident of the full age of majority and citizen of Louisiana, who is believed to be currently residing at 144 Felicia Drive, Avondale, Louisiana, which is within the jurisdiction of this Honorable Court.

3.

Original jurisdiction of this action is conferred upon this Court pursuant to its admiralty and maritime jurisdiction as specified by 28 U.S.C. §1333, Rule 9(h) of the Federal Rules of Civil Procedure and this Court's power to grant a Declaratory Judgment pursuant to 28 U.S.C. §2201 *et seq.*

4.

At all material times, Cruise was an employee of LMO and for the purposes of this Complaint for Declaratory Judgment, Cruise would have been classified as a "seaman" within the meaning of the Jones Act, 46 U.S.C. §30104.

5.

Venue is proper in this Court since Cruise resides within the jurisdiction of this Honorable Court.

6.

On or about December 8, 2018, Cruise was allegedly involved in an accident while in the service of the M/V MISS LILLIE when, while building a tow, a shackle pin allegedly landed on his right foot.

7.

Cruise was offered medical treatment but declined such treatment and continued working for LMO.

8.

On or about December 8, 2018, Cruise advised LMO that he could not afford to work for the company and gave 2 weeks notice that he would be leaving employment with the company.

9.

On or about December 27, 2018, Cruise asked to be seen by a physician for pain in his right foot. At LMO's expense, he was seen at Westbank Medical & Walk In Clinic that day with a complaint of foot pain but did not provide any history that he had been injured while in the service of any vessel.

10.

X-rays of the right foot were taken at Westbank that day which were negative.

11.

On December 31, 2018, Cruise resigned from his employment with LMO because he had found other employment.

12.

Upon information and belief, before resigning from his position at LMO, Cruise had applied for employment with Genesis Marine.

13.

Upon information and belief, on December 20, 2018, (12 days after Cruise's alleged accident and injury of December 8, 2018), Cruise underwent a pre-placement evaluation with Genesis in which he was found fit for duty.

14.

Upon information and belief, in his pre-placement evaluation, Cruise specifically denied sustaining any injuries or illnesses in his prior employment or having any disability.

15.

Upon information and belief, in the aforesaid pre-placement evaluation, Cruise specifically denied sustaining any injuries to his spine, joints, weakness in any extremity, swelling, stiffness or pain on motion.

16.

Upon information and belief, in the aforesaid pre-placement evaluation, Cruise specifically denied any prior accident or injuries.

17.

Upon information and belief, in the aforesaid pre-placement evaluation, Cruise completed multiple medical history questionnaires, which he certified as being correct, in which he denied any injuries to his back, neck, joint problems, impaired movement, injuries or fractures.

18.

Upon information and belief, in connection with the December 20, 2018 pre-placement evaluation, Cruise was found to be in good health, except for being overweight, and able to perform his job duties with Genesis.

19.

Upon information and belief, in connection with the aforesaid pre-placement evaluation, Cruise underwent extensive functional tests which indicated that he was capable of completing all physical tasks expected with his job with Genesis.

20.

Upon information and belief, during the aforesaid pre-placement evaluation on December 20, 2018, Cruise's physical examination was completely normal, including his feet, legs and spine.

21.

Upon information and belief, on January 18, 2019, Cruise was hired by Genesis on a full-time basis as a tankerman trainee.

22.

On February 6, 2019, Cruise contacted LMO to advise them that he had moved and that he needed LMO to send his W-2 form to a new address. At that time, Cruise

made no complaints whatsoever to LMO that he had become injured or ill while in the service of the vessel and/or was in need of medical treatment.

23.

Upon information and belief, on or about February 15, 2019, Cruise was taken off of his boat at Genesis because he was sick and had a viral syndrome.

24.

Upon information and belief, on or about February 15, 2019, Cruise was seen at Prime Occupational Medicine and complained of multiple problems but did not report any problems with his right foot, leg, hip or back.

25.

Upon information and belief, on the aforesaid date, Cruise again completed a medical history questionnaire in which he denied any occupational injuries or illnesses on his current job or prior jobs and specifically denied any joint pain or swelling or back pain.

26.

Upon information and belief, on the aforesaid history form, when asked whether he had ever reported any job related injury, he replied affirmatively and stated that his only on the job injury was to his hand.

27.

Upon information and belief, on or about February 15, 2019, Cruise was specifically asked whether he had any leg pain, muscle problems or muscle strains, which he denied.

28.

Upon information and belief, on the aforesaid date, Cruise was instructed to remain off of work for 24 hours so that he could allow his symptoms from a viral syndrome to resolve.

29.

Upon information and belief, on or about February 19, 2019, Cruise was seen at Pelican State Outpatient for a medical evaluation and was told that he could return to work with no restrictions as of February 19, 2019.

30.

On or about March 27, 2019, LMO received a written demand from attorney Daniel Poolson seeking maintenance benefits for Cruise for an alleged accident of "November 2018".

31.

The aforesaid demand did not contain any medical records indicating that Cruise had become injured or ill while in the service of a vessel owned or operated by LMO or while employed by LMO.

32.

On April 26, 2019, through undersigned counsel, LMO advised Cruise, through his attorney, that it was LMO's understanding that Cruise had resigned or quit his employment with LMO in December 2018 because he had found other employment and that he had gone to work for another company. In order to investigate the demand for maintenance benefits, LMO made written demand on Mr. Poolson for copies of all medical records and bills in his possession, indicating that Cruise was injured while working for

LMO and was in need of medical treatment. LMO also asked for medical and employment authorizations.

33.

The aforesaid authorizations were forwarded to LMO on or about May 9, 2019 and, on behalf of LMO, undersigned counsel wrote to Mr. Poolson again on May 16, 2019 and asked him for the names of any doctors that had treated Cruise for his alleged accident and injury and again requested copies of any medical records in his possession, including the results of an EMG which Cruise's attorney had indicated was normal.

34.

On June 10, 2018, LMO again made written demand on Cruise, through his attorney, for any and all records that had been previously requested by LMO.

35.

On August 20, 2019, counsel for LMO received an e-mail from Cruise's second attorney in which he was now claiming that Cruise had two separate accidents while in LMO's employ, one on November 20, 2018 and the second on December 8, 2018; that he was now being treated by Dr. Peter Liechty; and that Dr. Liechty was now recommending back surgery in the form of a bilateral sacroiliac fusion for Cruise. A demand was made for maintenance and cure benefits, including authorization for back surgery.

36.

On August 23, 2019, LMO made another demand on Cruise's counsel for any and all records concerning Cruise, including the results of the EMG which were reported to be normal by Cruise's first attorney. Furthermore, with medical records now in hand, LMO

requested the opportunity to obtain a recorded statement from Cruise at the offices of and in the presence of his attorney.

37.

In the aforesaid letter, counsel for LMO also advised Cruise's attorney that LMO sought to have Cruise evaluated by a neurosurgeon.

38.

On August 29, 2019, counsel for Cruise advised counsel for LMO in writing that he had no objection to producing Cruise for a statement to be taken at his office.

39.

Subsequent to August 29, 2019, LMO made multiple attempts to obtain the statement, so that it could investigate Cruise's demand for maintenance and cure.

40.

On November 7, 2019, LMO had Cruise evaluated by Dr. Everett Robert, neurosurgeon, who concluded that Cruise did not sustain any type of anatomic injury to his lumbar spine, hip or sacroiliac joint and was not in need of the surgery being recommended by Dr. Liechty.

41.

After repeated attempts, an interview and recorded statement of Cruise was scheduled for November 12, 2019 but was cancelled shortly before that meeting at the request of Cruise's attorney.

42.

On or about November 22, 2019, counsel for Cruise advised that he would attempt to have the statement rescheduled for the following week.

43.

Later that same day, counsel for Cruise withdrew his agreement to allow LMO to obtain a statement from Cruise and investigate his demand for maintenance and cure.

44.

LMO specifically denies that Cruise sustained two separate accidents and injuries while in its employ, as now claimed.

45.

LMO submits that it is entitled to investigate Cruise's demand for maintenance and cure benefits.

46.

LMO specifically denies that Cruise is entitled to any maintenance and cure benefits from it.

47.

LMO seeks declaratory judgment that Christopher Cruise was a seaman, within the terms of the Jones Act, during his employment with LMO.

48.

LMO now comes to this Honorable Court seeking Declaratory Judgment that it is not obligated to provide maintenance and cure to Cruise for the reason that Cruise did not sustain an injury that occurred, was aggravated or manifested itself or required medical treatment, while Cruise was in the service of an LMO vessel or employed by LMO.

49.

LMO further seeks declaration that any current medical condition of Cruise did not arise out of the unseaworthiness of the M/V MISS LILLIE or the negligence of LMO. LMO reserves the right to amend this Article as further information is obtained.

50.

LMO is entitled to a declaration that it is not obligated to provide Cruise with maintenance and cure benefits or other remedies allowed by law.

WHEREFORE, Complainant, Louisiana Marine Operators, LLC, prays for:

a) An Order declaring Christopher Cruise to be a seaman as defined by the Jones Act, 46 U.S.C. §1333.

b) An Order declaring that Cruise's perspective medical treatment and/or further medical treatment does not fall within any maintenance and cure obligations of LMO, if any;

c) An Order declaring that Cruise is not entitled to any maintenance and/or cure benefits from LMO or any relief pursuant to the General Maritime Law or other laws of the United States;

d) That LMO be awarded such other and further relief as may be warranted in the premises.

[SIGNATURE BLOCK ON NEXT PAGE]

Respectfully submitted,

     s/Georges M. Legrand
GEORGES M. LEGRAND, T.A. (Bar #8282)
MICHAEL T. NEUNER (Bar #36605)
Mouledoux, Bland, Legrand & Brackett
701 Poydras Street, Suite 4150
New Orleans, LA  70139
Telephone:  504-595-3000
Facsimile:    504-522-2121
E-Mail:  glegrand@mblb.com;
mneuner@mblb.com
**COUNSEL FOR COMPLAINANT,
LOUISIANA MARINE OPERATORS, LLC**

Service will be attempted via Waiver

11